IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM T. MORRISON, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 06-812 (JBS) |
| v. | : | |
| BRUCE PHILLIPS, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Calvin Taylor, Jr., Esq.
LASSITER & ASSOCIATES
One Penn Square West, 7th Floor
Philadelphia, PA 19102
    <u>and</u>
Craig L. Thorpe, Esq.
807 North 63rd Street
First Floor
Philadelphia, PA 19151
    Attorney for Plaintiff

David Allan Clark, Esq.
GLUCK WALRATH, LLP
428 River View Plaza
Trenton, NJ 08611
    Attorney for Defendants

**SIMANDLE**, District Judge:

This action, brought pursuant to 42 U.S.C. § 1983, arises out of Plaintiff's allegations that certain individual Defendants used excessive force when arresting him and failed to provide him with medical treatment while he was in custody, and that the municipal Defendants had a policy or custom of tolerating or encouraging such violations.  Presently before the Court is Defendants' motion for summary judgment [Docket Item 35].  For

the reasons explained below, the Court will grant in part and deny in part Defendants' motion.

**I.     BACKGROUND**

    **A.     Facts**

On the evening of October 10, 2005, John Pettiford was walking in a wooded area behind a bar called Belly Busters in Pemberton Township when he encountered three men who knocked him to the ground, removed his shoes and socks, rifled through his pockets and stole his personal property.  (Defs.' Br. Ex. F at 4.)  Mr. Pettiford recognized two of his assailants as Gary Taylor and Todd Wills, but did not recognize the third assailant, who was a heavy-set African-American man in a dark shirt and blue jeans.  (Id.)  After the three men fled, Mr. Pettiford made his way to a nearby Wawa store, from which he called 9-1-1 and informed the dispatcher that he had been assaulted.  (Id.)

At 9:35 p.m. that evening, Defendants Phillips and Geibel – both Pemberton Township police officers – were dispatched to the Wawa from which Mr. Pettiford had placed the telephone call in order to respond to Mr. Pettiford's complaint.  (Id.)  Mr. Pettiford described the circumstances of the assault, identified the two attackers he recognized (Mr. Taylor and Mr. Wills), and described the third unknown assailant to the police officers. (Id.)  Immediately after speaking with Mr. Pettiford, Officers Phillips and Geibel set out with flashlights for the wooded area

2

where the assault had taken place.  (Id.)  Close to the site
where the assault had occurred, behind Belly Busters bar,
Officers Phillips and Geibel encountered Mr. Pettiford's shoes
and socks, and, closer to the bar, a group of five or six men
drinking beers and smoking cigarettes.  (Id.; Morrison Dep. at
137-38.)  Among this group of men were Mr. Taylor and Mr. Wills,
whom Mr. Pettiford claimed had assaulted him, and Plaintiff,
William T. Morrison, whom the officers thought matched Mr.
Pettiford's description of a heavy-set African-American male in a
dark shirt and blue jeans. (Defs.' Br. Ex. F at 4.)

Upon spotting the group of men behind the bar, Officers
Phillips and Geibel approached the group, ordering them to "get
down on the ground."  (Morrison Dep. at 141.)  All of the men
except for Plaintiff complied with the officers' order.  (Defs.'
Br. Ex. F at 4.)  Plaintiff, who observed that the police
officers had their guns drawn, put his hands in the air and
stated, "I'll do anything that you want me to do . . . but I'm
not laying in this mud."  (Morrison Dep. at 145.)

Mr. Morrison and Officers Phillips and Geibel offer
conflicting accounts of what happened next.  According to the
police officers, Mr. Morrison "continued to walk towards [their]
direction after being advised to stop several times" and was
advised that he was being placed under arrest for failing to
comply with the officers' directions.  (Defs.' Br. Ex. F at 4.)

In the officers' account, Mr. Morrison proceeded to resist their efforts to arrest him, "struggling" with the officers, "pushing and shoving Officer Geibel and [Officer Phillips]," and was "eventually taken down to the ground" and sprayed in the face with mace in order to subdue him as he continued to resist the officers' efforts.  (Id.)

Plaintiff denies having approached, pushed or struggled with the officers.  (Morrison Dep. at 145-149.)  Instead, according to Plaintiff, as soon as he informed the officers that he would do anything but lay in the mud, the officers immediately approached him, grabbed his arms, and kicked him repeatedly in the legs. (Id. at 145.)  Once Plaintiff "realized they were trying to hurt [him, he] laid down on the ground," (id. at 164), at which point one of the officers "just went frantic": the officers punched Plaintiff's hand ten times to knock the cigarette out of it, and handcuffed his hands behind his back.  (Id. at 146.)  With Plaintiff lying on the ground with his hands handcuffed behind his back, an officer punched Plaintiff repeatedly in the back "while the other officer stood on top of [his] face," and sprayed mace in Plaintiff's face.  (Id. at 146.)  After the officer sprayed mace in Plaintiff's face, one of the officers stood on his back.  (Id. at 170.)  Throughout this entire course of events, Plaintiff claims, he was "submissive," he "didn't try to fight back," and "did not struggle at all."  (Id.)

4

At some point during or shortly after Plaintiff's arrest, several other Pemberton Township police officers arrived at the scene. (Id. at 171.)  Plaintiff was taken to a police vehicle operated by Defendant Schuler, who drove Plaintiff to the police station. (Id. at 177-78.)  Mr. Taylor and Mr. Wills, who had also been arrested at the scene, were transported to the police station in separate vehicles. (Defs.' Br. Ex. F at 5.)  At the police station, Mr. Pettiford made a positive identification through a two-way window of Messrs. Morrison, Taylor, and Wills as the men who had assaulted him earlier that evening. (Id.)  Plaintiff was charged with robbery by force, resisting arrest, and obstructing the investigation of a crime.[1]  (Id. at 1.)

After Plaintiff was charged and fingerprinted, he was taken to a cell in the police station. (Morrison Dep. at 186.)  Once Plaintiff was in the cell, he felt his back stiffen up and began to experience "extreme pain," and he called out to the officers that his "back was hurting . . . [and that he] needed some help." (Id. at 187-89.)  Forty-five minutes later, four officers – Defendants Phillips, Geibel, Doyle and Wehman – arrived at

---

[1]  Ultimately, the county prosecutor moved for an order of nolle prosequi of the indictments against Plaintiff, Mr. Taylor, and Mr. Wills after Mr. Pettiford renounced the allegations in his initial complaint "due to [his] condition of being highly intoxicated and confused[] on that same evening." (Defs.' Br. Ex. H at 67.)  Mr. Pettiford indicated in a written statement that Mr. Morrison, Mr. Taylor and Mr. Wills "absolutely did not commit the crime of robbery, assault, or theft against [him]." (Id.)

Plaintiff's cell to transport Plaintiff from the police station
to the Burlington County Jail.  (Id. at 191.)  When the officers
approached, Plaintiff was laying down on the bench and, according
to his deposition testimony, was unable to move.  (Id. at 189,
192.)  Notwithstanding the fact that Plaintiff complained to the
officers about the pain in his back and requested medical
assistance, the officers pulled him off the bench and dragged him
on his back along the ground "all the way out the station."  (Id.
at 190-93.)  According to Plaintiff, once the officers had
dragged him out of the police station and to the police vehicle,
Defendant Doyle put his hands around Plaintiff's head and, with a
"hard and quick" gesture, twisted Plaintiff's neck.  (Id. at 192,
194-95.)  The officers then "threw" Plaintiff into one police
vehicle, took him out of that vehicle, and put him in a different
vehicle.[2]

Plaintiff was transported to the jail, where he was escorted
to the admissions section.  (Id. at 200.)  At the admissions
section, Plaintiff was interviewed by the admissions officer,
Lieutenant Gains, to whom he complained that he was experiencing
back pain and could not walk or stand.  (Id.; Defs.' Br. Ex. I at
1.)  Lieutenant Gains informed Officer Doyle that Plaintiff could

---

[2]  As with the circumstances surrounding Plaintiff's arrest,
the officers contest Plaintiff's version of these events and
claim that Plaintiff refused to cooperate with their efforts to
remove him from the cell.  (Defs. Br. Ex. J at ¶ 18.)

6

not be admitted to the jail without first being examined by a
doctor on account of his back pain, (Morrison Dep. at 200-01),
and Lieutenant Gains completed an "Admission Refusal Form" noting
that "prisoner is in pain" and "cannot walk due to back
injuries."  (Defs.' Br. Ex. I at 1.)  Officer Doyle then
transported Plaintiff to Virtua Health Memorial Hospital.
(Morrison Dep. at 201.)

At the hospital, Defendant Doyle and another police officer
wheeled Plaintiff inside in a wheelchair.  (Id. at 202.)
Plaintiff was examined by a nurse and a doctor, who had Plaintiff
do "a range of motion test" to examine the extent of his back
injuries.  (Id. at 203-04.)  The doctor determined that Plaintiff
had a lower back strain and gave Plaintiff 800 milligrams of
Motrin.  (Id. at 203-04.)  According to Plaintiff, he continued
to experience pain in his back for approximately a year after the
October 10, 2005 incidents.  (Id. at 204.)  Following the
physician's examination of Plaintiff at the hospital, Defendant
Doyle transported Plaintiff back to the Burlington County Jail,
where he was admitted without further incident.  (Id. at 204-05.)

B.   **Procedural History**

Plaintiff, initially proceeding pro se, filed two lawsuits
arising out of the events of October 10, 2005 described above,
which the Court consolidated in an Order entered on March 19,
2007 [Docket Item 26].  Plaintiff alleges that Defendant Officers

7

Phillips, Geibel, Doyle, and Wehman violated his constitutional rights by using excessive force during his arrest and incarceration and by failing to provide Plaintiff with medical treatment; that Defendant Schuler violated Plaintiff's constitutional rights by failing to intervene when she witnessed Defendants Phillips and Geibel using excessive force upon Plaintiff; and that Pemberton Township and a number of its employees[3] violated Plaintiff's constitutional rights by promoting a policy or custom of encouraging police officers to use excessive force.

At the close of the pretrial discovery period, on February 29, 2008, Defendants filed the motion for summary judgment presently under consideration [Docket Item 35]. Plaintiff failed to timely oppose Defendants' motion, but in a letter dated April 1, 2008, he wrote the Court to request an enlargement of time to file his opposition to Defendants' motion. On April 24, 2008, the Court issued a Letter Order in which it noted that Plaintiff's request for an enlargement was untimely, but nonetheless granted Plaintiff an additional fourteen days to submit his opposition.

-------------------------------------

[3] The individually named municipal Defendants are Robert McCullough, the former mayor of Pemberton Township; Caroline Radice, former president of Pemberton's town council; David Thompson, Pemberton's former Business Administrator; Stephen Emery, Pemberton's former police chief; and David Jantas, a police officer who conducted an internal affairs investigation of Plaintiff's complaint.

In a letter dated May 8, 2008 – the day Plaintiff's
opposition was due – Calvin Taylor, Esq., informed the Court that
on May 7, 2008, he had been retained to represent Plaintiff, and
requested an extension of two weeks to file his opposition to
Defendants' motion.  The Court replied to Mr. Taylor in a Letter
Order dated May 15, 2008, wherein the Court stated:

> It appears that you are not a member of the New Jersey
> bar.  Accordingly, you can appear before this Court only
> if local counsel who is a member of the New Jersey bar
> (but who need not have an office in New Jersey) moves
> your admission *pro hac vice* and assumes the
> responsibilities of counsel in the case pursuant to Local
> Civil Rule 101.1 of the United States District Court for
> the District of New Jersey.  If you do not have a copy of
> these rules, they are available on this Court's website,
> www.njd.uscourts.gov . . . .
>
> Under all the circumstances, and to eliminate any future
> confusion regarding Mr. Morrison's obligation to respond
> to the pending dismissal motion, I will enlarge Mr.
> Morrison's time to submit his opposition until May 22,
> 2008.  No further extensions will be granted in light of
> the long delays already experienced.

(Docket Item 37.)  Mr. Taylor appears to have made no effort seek
pro hac vice admission until May 22, 2008, the final date for
Plaintiff to have filed his long-delayed opposition to
Defendants' motion.  On that date, Craig L. Thorpe, Esq., filed a
motion in which Mr. Thorpe, a member of the New Jersey bar,
agreed to act as co-counsel on behalf of Plaintiff and requested
that Mr. Taylor be admitted to appear pro hoc vice on behalf of
Plaintiff [Docket Item 39].  That same day, the Clerk of the
Court terminated Mr. Thorpe's motion due to the fact the pleading

did not contain a proper electronic signature.  Five days later,
on May 29, 2008, Mr. Thorpe filed a properly signed motion for
<u>pro</u> <u>hoc</u> <u>vice</u> admission [Docket Item 38].[4]

Mr. Taylor also attempted to submit a response in opposition
to Defendants' motion.  This document was allegedly hand-
delivered to the Clerk of the Court on May 22, 2008.[5]  The
document was signed by Mr. Taylor, but not by Mr. Thorpe, who was
required to "personally sign all papers submitted to the Court or
filed with the Clerk" under Local Civil Rule 11.1.[6]

## II.  DISCUSSION

### A.   Plaintiff's Opposition

As a threshold matter, the Court addresses Defendants'
argument that their motion should be deemed unopposed on account
of the deficiencies in the pleading submitted by Mr. Taylor.  In
support of this argument, Defendants note that the document
submitted by Mr. Taylor was not signed by Mr. Thorpe, in
violation of L. Civ. R. 11.1, and, owing to Mr. Taylor's delay in

---

[4]  Magistrate Judge Donio subsequently issued an Order
granting this motion [Docket Item 40].

[5]  Because Mr. Taylor is not a member of the New Jersey bar,
and because an attorney admitted to the New Jersey bar did not
sign the document, it appears that the Clerk of the Court did not
accept this allegedly hand-delivered document.

[6]  Rule 11.1 provides in full: "In each case, the attorney
of record who is a member of the bar of this Court shall
personally sign all papers submitted to the Court or filed with
the Clerk."  L. Civ. R. 11.1.

seeking <u>pro</u> <u>hoc</u> <u>vice</u> admission, Mr. Taylor was not permitted to
serve as Mr. Morrison's counsel at the time he attempted to file
his opposition brief.  In addition, Defendants note, Mr. Taylor's
submission fails to comply with Local Civil Rule 56.1, in that
his pleading contains no "statement which sets forth material
facts as to which there exists or does not exist a genuine
issue."  L. Civ. R. 56.1.[7]  In light of these deficiencies,
Defendants argue that their motion should be deemed unopposed.

The Court agrees.  As the Court explained, <u>supra</u>,
notwithstanding the clear directions in the Court's May 15, 2008
Letter Order, Mr. Taylor made no apparent effort to seek
<u>pro</u> <u>hoc</u> <u>vice</u> admission until the final deadline for Plaintiff's
opposition submission, when Mr. Thorpe filed an unsigned motion
for <u>pro</u> <u>hoc</u> <u>vice</u> admission.  Disregarding Local Civil Rule 11.1's
requirement that "the attorney of record who is a member of the
bar of this Court shall personally sign all papers submitted to
the Court or filed with the Clerk," L. Civ. R. 11.1, Mr. Thorpe
did not sign the opposition brief that Mr. Taylor attempted to
file.  These deficiencies took place months after Plaintiff's
opposition brief would have been due had the Court not granted a
series of generous extensions.  By the end of the final extension
period, no attorney admitted to the bar of this Court had

---

[7]  L. Civ. R. 56.1 was subsequently amended, effective Sept.
4, 2008.  The prior version applies to the present motion.

submitted an opposition brief on Plaintiff's behalf; indeed, no
such submission has been filed to date.

Mr. Taylor's attempted submission is deficient in a separate
but equally important respect: not only does the pleading fail to
include a statement of disputed and undisputed facts as L. Civ.
R. 56.1 plainly requires, but the brief contains no citations to
the record whatsoever.  The section of the brief entitled
"Statement of the Facts" contains nothing but a narrative account
of the allegations in Mr. Morrison's two Complaints, without
citing any evidence in support of the factual matters as to which
Plaintiff would bear the burden of proof at trial.  See Fed. R.
Civ. P. 56(e)(2) ("When a motion for summary judgment is properly
made and supported, an opposing party may not rely merely on
allegations or denials in its own pleading; rather, its response
must – by affidavits or as otherwise provided in this rule – set
out specific facts showing a genuine issue for trial").

On account of the failings of Plaintiff's attorneys to
comply with Local Civil Rules 11.1 and 56.1, the Court will treat
Defendants' motion as unopposed.  As the following discussion
makes clear, however, even an unopposed motion for summary
judgment may be granted only if "appropriate" under Rule
56(e)(2), supra, and, accordingly, even though Plaintiff's
counsel failed altogether to identify the portions of the record
supportive of Plaintiff's claims, the Court will determine, as to

each claim, whether Defendants are entitled to judgment as a matter of law.  See, e.g., Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).

**B.   Standard of Review**

On a motion for summary judgment, the court must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Fed. R. Civ. P.  56(c)).  In applying this standard, courts must view the evidence in favor of the nonmoving party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The moving party bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, where, as here, the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Additionally, where, as here, the nonmoving party fails to oppose the motion with evidence such as written objection, a timely filed memorandum, or affidavits, the Court "will accept as

true all material facts set forth by the moving party with
appropriate record support."  Anchorage Assocs., 922 F.2d at 175
(quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If
the nonmoving party has failed to establish a triable issue of
fact, summary judgment will not be granted unless "appropriate,"
and only if the moving party is entitled to judgment as a matter
of law.  Fed. R. Civ. P. 56(e); see Anchorage Assocs., 922 F.2d
at 175.

   C.   **Pemberton Township and Official-Capacity Claims –
        Municipal Liability**

     Defendants argue, and the Court agrees, that they are
entitled to summary judgment as to Plaintiff's claims against
Pemberton Township and all individual Defendants in their
official capacities, because Plaintiff has failed to adduce
evidence suggesting that the alleged constitutional violations
were the result of a municipal policy or custom.  Initially, the
Court notes that Plaintiff's claims against each individual
Defendant in his or her official capacity "is the same as a suit
against the entity of which the officer is an agent."  McMillian
v. Monroe County, Ala., 520 U.S. 781, 785 n.2 (1997) (internal
quotations and citations omitted).  "Because [Plaintiff] is suing
[Pemberton] Township, the suit against the officers in their
official capacities is redundant," and Plaintiff's official-
capacity claims against all individual Defendants will
accordingly be dismissed.  Cuvo v. De Biasi, 169 Fed. Appx. 688,

14

693 (3d Cir. 2006) (citing McMillian, 520 U.S. at 781).

As to Plaintiff's section 1983 claims against Pemberton Township, the Court will grant Defendants' motion for summary judgment because the record contains no evidence from which a reasonable jury could conclude that the municipality had a policy or custom of tolerating or encouraging the use of excessive force by its police officers.  In Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), "the Supreme Court held that municipal liability under 42 U.S.C. § 1983 cannot be based on the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  Watson v. Abington Tp., 478 F.3d 144, 155 (3d Cir. 2007).  The Court made clear in Monell that it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 694.

A § 1983 plaintiff may establish the existence of such a policy or custom in one of two ways:

> The Plaintiff[] may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). The Plaintiff[] may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so

> permanent and well settled" that they operate as law.
> <u>Monell</u>, 436 U.S. at 690.   In either instance, the
> Plaintiff[] ha[s] the burden of showing that a government
> policymaker is responsible by action or acquiescence for
> the policy or custom.

<u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F.3d 247, 250 (3d Cir. 2007) (some internal quotations and citations omitted).

In this case, Plaintiff has adduced no evidence indicating that such a policy or custom existed.  There is nothing in the record suggesting that a decisionmaker with final authority "issued an official statement of policy" directing its police officers to employ excessive force in effectuating arrests.  <u>Id.</u> Likewise, although the Complaint contains nonspecific allegations that Pemberton customarily tolerated its police officers' use of excessive force, Plaintiff has identified no evidence from which a jury could reasonably conclude that such a custom existed – there is no evidence in the record to suggest, for example, "continued official tolerance of repeated misconduct," <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 851 (3d Cir. 1990), or a pattern of conducting inadequate investigations into complaints of police brutality.  <u>See</u> <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 975 (3d Cir. 1996).  As to his municipal liability claims, Plaintiff has leveled allegations but has produced no evidence, which is, of course, insufficient to survive a motion for summary judgment.

Finding no evidence in the record sufficient under <u>Monell</u> and its progeny to support Plaintiff's claims against Pemberton

Township and its officers acting in their official capacities,
the Court will grant Defendants' motion for summary judgment as
to all such claims.

> **D.  Individual-Capacity Claims Against Defendants
> McCullough, Radice, Thompson, Emery, and Jantas**

Defendants are likewise entitled to summary judgment as to
Plaintiff's individual-capacity claims against Defendants
McCullough, Radice, Thompson, Emery, and Jantas.  Plaintiff's
claims against these Defendants appear to be premised entirely
upon a theory of <u>respondeat</u> <u>superior</u> liability, in that he has
neither alleged, nor produced evidence demonstrating, that any of
these Defendants was personally involved in the alleged
constitutional violations at issue in this case.  It is well-
established that "[s]ection 1983 will not support a claim based
on a <u>respondeat</u> <u>superior</u> theory of liability." <u>Polk County v.
Dodson</u>, 454 U.S. 312, 325 (1981); <u>see</u> <u>also</u> <u>Rode v. Dellarciprete</u>,
845 F.2d 1195, 1207 (3d Cir. 1988).  For this reason, as the
Court of Appeals stated in <u>Rode</u>, "[a] defendant in a civil rights
action must have personal involvement in the alleged wrongs,"
which can be shown through evidence demonstrating "personal
direction or . . . actual knowledge and acquiescence." <u>Rode</u>, 845
F.2d at 1207.  Just as allegations of personal involvement or
knowledge and acquiescence must contain "actual facts, as opposed
to conclusions, connecting [the official to the action in
question]," <u>Evancho v. Fisher</u>, 423 F.3d 347, 354 (3d Cir. 2005),

17

upon summary judgment, a section 1983 plaintiff must adduce evidence from which a jury could reasonably find that the defendant was personally involved in the alleged violation or knowingly acquiesced in its commission.

Plaintiff has not produced such evidence demonstrating the personal involvement of Defendants McCullough, Radice, Thompson, Emery, and Jantas in the allegedly unconstitutional acts under consideration in this case.  The mere fact that these Defendants held supervisory positions within Pemberton Township and the Pemberton Township Police Department during the time period at issue here, without evidence suggesting that they participated in, or knew of and acquiesced in, the allegedly unconstitutional conduct in question, is insufficient to support Plaintiff's claims against these Defendants.  See Rode, 845 F.2d at 1207. Defendants' motion for summary judgment as to Plaintiff's individual-capacity claims against Defendants McCullough, Radice, Thompson, Emery, and Jantas will accordingly be granted.

### E.   Claim Against Defendant Schuler – Duty to Intervene

The Court will also grant Defendants' motion for summary judgment as to Plaintiff's claim against Defendant Schuler. Plaintiff's claim against Defendant Schuler appears to be premised on the theory that she had a duty to intervene: in his Amended Complaint, he alleges that while Defendants Phillips and Geibel were arresting and using excessive force upon Plaintiff,

18

Defendant Schuler "arriv[ed] on the scene, and deliberately turn[ed] her vehicle away from view of the scene."  (Am. Compl. at 6.)

The Court of Appeals discussed the scope of a police officer's duty to prevent another officer from using excessive force in Smith v. Mensinger:

> Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior.  "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); accord Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).  However, an officer is only liable if there is a realistic and reasonable opportunity to intervene. See Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene); Brishke, 466 F.2d at 11 (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman, 639 F.2d at 423-24 (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002).

Because no jury could find from the evidence in the record that Defendant Schuler had "a realistic and reasonable opportunity to intervene" in order to prevent Defendants Phillips and Geibel from using excessive force when arresting Plaintiff, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim against Defendant Schuler.  Id. at 651.  The

19

only evidence in the record on the question of whether Defendant Schuler had such an opportunity to intervene is Plaintiff's deposition testimony that when the officers "were beating on me . . . I saw light.  I didn't pay attention to it.  I thought about it months later.  I started thinking about it."  (Morrison Dep. at 177-78.)  By "light," Plaintiff presumably was referring to the headlights on Defendant Schuler's police vehicle.

Even giving Plaintiff the benefit of all favorable inferences, the Court finds that this testimony falls far short of suggesting, much less establishing, that "there [was] a realistic and reasonable opportunity for [Defendant Schuler] to intervene" during Defendants Phillips' and Geibel's allegedly unlawful use of force.  Smith, 293 F.3d at 651.  The mere fact that Plaintiff observed headlights at the time he was allegedly being beaten does not indicate that he saw Defendant Schuler's headlights; this is particularly true in light of the fact that multiple officers in multiple police vehicles arrived at Belly Buster's during and after the time of the arrest.  (Morrison Dep. at 177.)  Moreover, the fact that a vehicle arrived at a nearby parking lot at the time Plaintiff was being arrested does not indicate that the person in the vehicle – Defendant Schuler or someone else – "saw the beating or had time to reach the offending officer," Smith, 293 F.3d at 651 (citation omitted), particularly in light of Plaintiff's testimony that the use of

force lasted no more than fifteen seconds.  (Morrison Dep. at
171.)

     In short, the evidence is insufficient for a jury to find
that Defendant Schuler saw Plaintiff's arrest or that "there [was]
a realistic and reasonable opportunity for [Defendant Schuler] to
intervene" during the arrest.  Smith, 293 F.3d at 651.  That is,
with nothing more than Plaintiff's testimony that he "saw light"
at the time of his arrest, (Morrison Dep. at 177), a jury could
not make any determinations about Defendant Schuler's presence or
opportunity to intervene during the arrest without resorting to
speculation.  Because the evidence in the record is plainly
insufficient to establish that Defendant Schuler had a reasonable
opportunity to intervene in the alleged use of force, the Court
will grant Defendants' motion for summary judgment as to
Plaintiff's claim against Defendant Schuler.

     **F.   Excessive Force Claims**

     Plaintiff asserts excessive force claims against various
Defendants arising out of two incidents that took place on the
evening of October 10, 2005: (1) the allegedly excessive use of
force by Defendants Phillips and Geibel when they arrested
Plaintiff, and (2) the allegedly excessive use of force by
Defendants Phillips, Geibel, Doyle and Wehman when they
transported Plaintiff from his cell at the police station to the
police vehicle.  Defendants argue that they are entitled to

21

qualified immunity as to Plaintiff's excessive force claims.  The
Court first reviews the legal framework that governs its analysis
of Defendants' asserted qualified immunity defense, and then
addresses the merits of the claims and defenses as to each of the
above-mentioned incidents.

      1.  <u>Qualified Immunity Standard</u>

     As an "accommodation of competing values," qualified
immunity strikes a balance by permitting a plaintiff to recover
for constitutional violations where the defendant officer was
"plainly incompetent or . . . knowingly violate[d] the law,"
while immunizing an officer who "made a reasonable mistake about
the legal constraints on his actions."  <u>Curley v. Klem</u>, 499 F.3d
199, 206-07 (3d Cir. 2007) (internal quotations and citations
omitted).[8]  In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme
Court described the two-step inquiry courts undertake in
determining whether a governmental officer is entitled to
qualified immunity.  First, the Court must address whether "the
officer's conduct violated a constitutional right."  <u>Id.</u> at 201.
As the Court of Appeals noted in <u>Curley</u>, the first step of the
analysis is "not a question of immunity at all, but is instead

---

    [8]  "In the context of Fourth Amendment claims, qualified
immunity operates to protect officers from the sometimes hazy
border between excessive and acceptable force, and to ensure that
before they are subjected to suit, officers are on notice their
conduct is unlawful."  <u>Couden v. Duffy</u>, 446 F.3d 483, 492 (3d
Cir. 2006) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001))
(internal quotations omitted).

the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. If in this first step the Court finds that there was no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

"If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F.3d at 207 (quoting Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007)).  In the second step of the analysis, the Court addresses "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202).  The analysis of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201-02.

### 2.   Use of Force During Plaintiff's Arrest

As the following discussion makes clear, the Court finds that a genuine issue of fact exists as to whether Defendants Phillips and Geibel used excessive force when arresting Plaintiff, and, moreover, that under the facts as construed in

23

Plaintiff's favor, a reasonable officer would understand that the force allegedly used in arresting Plaintiff was unlawful.

The Fourth Amendment prohibits the use of excessive force by a law enforcement officer.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  As the Court of Appeals explained in Couden v. Duffy:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Couden, 446 F.3d at 496-97 (internal quotations and citations omitted).  Moreover:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal quotations and citations omitted).

Applying these considerations to the facts of this case, and

construing the record in the light most favorable to Plaintiff, the Court finds that a genuine issue of fact exists as to whether the arresting officers employed excessive force and thereby violated Plaintiff's Fourth Amendment rights.  See Saucier, 533 U.S. at 201 (the first step of the qualified immunity analysis addresses whether "the officer's conduct violated a constitutional right").  Plaintiff testified during his deposition that after he was on the ground, handcuffed, "submissive," and "not struggl[ing] at all," (Morrison Dep. at 170), Defendants Phillips and Geibel punched Plaintiff repeatedly in the back, stood on top of his face and back, and sprayed mace in his face.  (Id. at 146, 170.)  "[E]specially considering [Plaintiff's] claim that he did not resist arrest once on the ground," Peschko v. City of Camden, No. 02-5771, 2006 WL 1798001, at *5 (D.N.J. June 28, 2006), the Court concludes that if a jury were to credit Plaintiff's testimony regarding the degree of force used upon Plaintiff after he was on the ground and handcuffed, it could reasonably find that Defendants Phillips and Geibel used excessive force.  See, e.g., Couden, 446 F.3d at 497 (finding excessive force as a matter of law where there was no evidence that plaintiff "was resisting arrest or attempting to flee"); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 (6th Cir. 2004) ("putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone

position after being subdued and/or incapacitated constitutes excessive force," as does using mace on a subdued suspect).[9]

The Court further finds that "it would be clear to a reasonable officer" that Defendants Phillips' and Geibel's conduct, as described in Plaintiff's deposition testimony, was prohibited by the Fourth Amendment.  Saucier, 533 U.S. at 202. While the law recognizes, as a general matter, that "police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation," Graham, 490 U.S. at 396-97 (internal quotations and citations omitted), it is well-settled that repeatedly punching, using mace upon, and standing on the face of an incapacitated suspect offering no resistance whatsoever constitutes an excessive use of force.  See, e.g., Couden, 446 F.3d at 497; Champion, 380 F.3d at 903; Peschko, 2006 WL 1798001, at *5.  That is, in light of the above-referenced precedent unambiguously restricting the degree of force that an officer may use upon a

---

[9]  Plaintiff concedes that he did not instantaneously comply with the officers' orders to lay down, but instead raised his hands in the air and said that he did not want to lay in the mud. (Morrison Dep. at 145.)  The Court does not suggest that at this juncture, the officers would not have been justified in using some amount of force in order to compel Plaintiff to comply with their orders.  However, a jury could reasonably find that once Plaintiff was on the ground and handcuffed, and in light of the fact that, in his telling, Plaintiff offered no meaningful resistance to the officers' efforts to arrest him, the continued use of force upon Plaintiff described above was excessive.  See Peschko, 2006 WL 1798001, at *5.

subdued, non-resisting suspect, a law enforcement officer who uses such force upon an incapacitated suspect would not have "made a reasonable mistake about the legal constraints on his actions." Curley, 499 F.3d at 207.

Upon summary judgment, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. It is for the jury to resolve the "factual question[s] regarding the constitutional violation" – i.e., whether the officers repeatedly punched, maced, and stood on Plaintiff after he was incapacitated, and whether and to what extent Plaintiff resisted the officers' efforts to arrest him. Curley, 499 F.3d at 211. Once the jury resolves these questions, the Court will be in a position to determine whether Defendants Phillips and Geibel made a reasonable mistake of law and are entitled to qualified immunity. See id. (noting that "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury").

Because genuine issues of fact exist as to whether Defendants Phillips and Geibel used excessive force when arresting Plaintiff, and because such unresolved factual questions foreclose a determination at this time as to whether the officers made a reasonable mistake of law, the Court will

27

deny Defendants' motion for summary judgment as to Plaintiff's claim that Defendants Phillips and Geibel used excessive force during Plaintiff's arrest.  It is sufficient to note, under Plaintiff's version of the evidence, no reasonable officer in the position of Defendants Phillips and Geibel could have believed his conduct was lawful.

### 3.   Use of Force When Transporting Plaintiff

The Court also finds, upon considering the facts of record in the light most favorable to Plaintiff, that Defendants Phillips, Geibel, Doyle and Wehman are not entitled to qualified immunity as to Plaintiff's claim that these officers used excessive force when transporting him from his cell at the police station to the police vehicle.[10]

First, with regard to whether the conduct described in Plaintiff's deposition testimony "violated a constitutional right," Saucier, 533 U.S. at 201, the Court "cannot hold that the amount of force used by [the officers] was objectively reasonable as a matter of law."  Person v. Willingboro Tp., No. 02-3808, 2005 WL 2077285, at *5 (D.N.J. Aug. 25, 2005).  Construing the

---

[10]   While the use of force upon a post-arraignment, pretrial detainee is analyzed under the Fourteenth Amendment, see Sylvester v. City of Newark, 120 Fed. Appx. 419, 423 (3d Cir. 2005), the Court agrees with Defendants that "a person continues to be an arrestee subject to Fourth Amendment protection through the period of post-arrest but prearraignment detention."  Hill v. Algor, 85 F. Supp. 2d 391, 403 (D.N.J. 2000); see also Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996).

evidence in the record in Plaintiff's favor, at the time the
officers approached him in the cell at the police station,
Plaintiff could not walk, (Defs.' Br. Ex. I at 1), but was
otherwise not resisting the officers' efforts, (Morrison Dep. at
193); he had informed the officers that he was in pain and needed
medical attention, (id. at 195); and, notwithstanding Plaintiff's
non-resistance and complaints of back pain so severe he could not
move, the officers dragged Plaintiff, on his back, "all the way
out [of] the station," (id. at 190-93), at which point Defendant
Doyle grabbed and twisted Plaintiff's neck with a "hard and
quick" motion with no apparent purpose other than "to hurt
[Plaintiff]." (Id. at 195.)

     The Court cannot conclude, as a matter of law, that it was
an objectively reasonable use of force to drag an injured and
non-resisting arrestee through the police station and to grab and
twist the arrestee's neck. See, e.g., Mills v. Fenger, 216 Fed.
Appx. 7 (2d Cir. 2006) (reversing grant of summary judgment where
officers dragged injured suspect and noting that "the district
court improperly failed to credit Mills's claim that he was
physically unable to walk"); DeGraff v. District of Columbia, 120
F.3d 298, 302 (D.C. Cir. 1997).[11]  Of course, a jury may find,

_____

     [11]  It bears noting that at the time the officers allegedly
dragged Plaintiff through the police station and twisted his
neck, they were not "forced to make [a] split-second judgment[]"
in "rapidly evolving" circumstances, Graham, 490 U.S. at 396-97,
but presumably could have paused to consider a less harmful mode

upon consideration of the evidence, that Plaintiff was resisting the officers, and that such resistance left the officers with little choice but to drag him, or that the officers carried, rather than dragged, Plaintiff to the police vehicle.  In light of Plaintiff's deposition testimony, however, the Court can draw no such conclusion at this stage.  See Liberty Lobby, 477 U.S. at 249.

Nor can the Court conclude that the conduct described in Plaintiff's deposition falls so close to the "hazy border between excessive and acceptable force" that a reasonable officer would not understand that the force allegedly used was excessive. Saucier, 533 U.S. at 206 (citation omitted).  Courts have repeatedly found Fourth Amendment violations where law enforcement officers unnecessarily drag an unresisting and injured suspect for a substantial distance in circumstances that do not require urgent action or split-second decisionmaking. See, e.g., Mills, 216 Fed. Appx. at 7 ("we cannot conclude that it was reasonable, as a matter of law, for the officers to have dragged Mills down three flights of stairs by his handcuffs"); Kerman v. City of New York, 261 F.3d 229, 233 (2d Cir. 2001); DeGraff, 120 F.3d at 302.  Nor does it appear from evidence in the record that an officer in these Defendants' position could have reasonably believed "that [Plaintiff] was malingering when

---

of transit.

he later refused to walk." <u>Person</u>, 2005 WL 2077285, at \*5.

Unlike <u>Person</u>, where the plaintiff was ably walking in the
moments before the officers dragged him, <u>id.</u>, in this case,
Plaintiff had been complaining to the officers and requesting
medical attention for forty-five minutes before he was dragged
through the police station.  (Morrison Dep. at 191.)  Defendants'
motion for summary judgment as to Plaintiff's excessive force
claims relating to his treatment at the Pemberton Township Police
Station will accordingly be denied.

    **G.   Denial of Medical Treatment**

    Finally, the Court addresses Defendants' argument that
Defendants Phillips, Geibel, Doyle and Wehman are entitled to
summary judgment as to Plaintiff's claim that they failed to
provide Plaintiff with medical care.  "Failure to provide medical
care to a person in custody can rise to the level of a
constitutional violation under § 1983 only if that failure rises
to the level of deliberate indifference to that person's serious
medical needs." <u>Groman v. Township of Manalapan</u>, 47 F.3d 628,
637 (3d Cir. 1995).  This standard "requires deliberate
indifference on the part of the prison officials and it requires
the prisoner's medical needs to be serious." <u>Spruill v. Gillis</u>,
372 F.3d 218, 235-36 (3d Cir. 2004) (internal quotations and
citations omitted).

    Defendants' sole argument as to Plaintiff's allegations that

they failed to provide medical care is that Plaintiff's medical

needs were not serious.[12]  The Court finds that summary judgment

as to this issue is not appropriate.  "[A]n objectively serious

medical need is one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's

attention."  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir.

2006) (internal quotations and citations omitted); see also

Spruill, 372 F.3d at 236.  Significantly,

> [a]lthough the "serious medical need" formulation is far
> from self-defining, it is clear that the Supreme Court
> contemplated that medical conditions far less critical
> than "life-threatening" would be encompassed by the term.
> Indeed, the inmate in [Estelle v. Gamble, 429 U.S. 97
> (1976)] based his medical care claim "solely on the lack
> of diagnosis and inadequate treatment of his back
> injury," which had been diagnosed by prison doctors as a
> lower back strain and treated with muscle relaxants and
> pain medication. 429 U.S. at 107.

Gutierrez v. Peters, 111 F.3d 1364, 1370-71 (7th Cir. 1997)

(emphasis added).

In light of the fact that the injury in question in Estelle

---

[12]  Defendants do not address the issue of whether
Defendants Phillips, Geibel, Doyle and Wehman were deliberately
indifferent to Plaintiff's medical needs, but focus exclusively
on the seriousness of Plaintiff's injury.  Bearing in mind that
the question of whether or not a defendant's conduct amounts to
"deliberate indifference has been described as a classic issue
for the fact finder," Armstrong v. Squadrito, 152 F.3d 564, 577
(7th Cir. 1998) (cited by A.M. ex. rel. J.M.K. v. Luzerne County
Juvenile Det. Ctr., 372 F.3d 572, 588 (3d Cir. 2004)), the
Court's discussion focuses on the issue identified by Defendants:
whether Plaintiff's medical needs were "serious."  Groman, 47
F.3d at 637.

was a lower back strain, courts have repeatedly invoked precisely the injury at issue in this case as the benchmark for a medical need that is serious but not life-threatening. See, e.g., id.; Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996). Based on the fact that Plaintiff's back pain was such that he could not walk, (Defs.' Br. Ex. I at 1), and the fact that he repeatedly called out to the officers in the police station that he was in extreme pain and needed medical attention, (Morrison Dep. at 187-89), the Court finds that a "lay person would easily recognize the necessity for a doctor's attention" in this case. Johnson, 444 F.3d at 585. While the Court recognizes that its consideration of whether a medical need is "serious" is fact- and case-specific, the sufficient seriousness of Plaintiff's back injury finds strong support in Estelle. See Koehl, 85 F.3d at 88. Defendants' motion for summary judgment as to Plaintiff's claims relating to the denial of medical care will accordingly be denied.

## III. CONCLUSION

For the reasons explained above, the Court will grant in part and deny in part Defendants' motion for summary judgment. Defendants' motion will be denied as to Plaintiff's individual-capacity claims against Defendants Phillips, Geibel, Doyle and Wehman for excessive force and denial of medical treatment. The

33

remainder of the relief sought in Defendants' motion will be

granted.   The accompanying Order will be entered.


**September 16, 2008**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge

34